IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LINDA WHEELER,

    Petitioner,

vs.

                                    Case No. 3:08cv8-LAC/WCS

WALTER A. McNEIL,

    Respondent.

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

This cause is before the court for ruling on a 28 U.S.C. § 2254 petition. Doc. 1. Respondent filed an answer, doc. 13, and Petitioner filed a reply. Doc. 18. The case was later referred to the undersigned for further proceedings. Doc. 22.

**Procedural History and Facts**

Petitioner challenges the judgment and sentence imposed by the Circuit Court of the First Judicial Circuit, in and for Santa Rosa County, Florida, case number 04-802CFA. Petitioner was found guilty by a jury of driving under the influence manslaughter with failure to render aid (count one), and of leaving the scene of a crash involving death (count two). Ex. B, p. 97 (verdict). A split sentence of 20 years

imprisonment followed by five years of probation was imposed. *Id.*, pp. 105-109 (judgment). *See also Id.*, at 142-143, 157 (sentencing transcript) (parties agreed to go to trial on two counts to allow a jury finding for Apprendi purposes as to leaving the scene,[1] but agreeing Petitioner could not be sentenced on both counts).

Briefly, by way of background,[2] on August 4, 2004, Petitioner was driving her car, a sports utility vehicle (SUV), heading West on Highway 98. Around 6:30 p.m., her car went off the right side of the road several feet, striking and killing a bicyclist, Jose Barcena. The body of Mr. Barcena (hereafter the victim) went over the hood, struck the front head light and the windshield, flew some 229 feet, and landed in a ditch, where he died soon after. Pieces of the bicycle flew up in the air, landing 131-246 feet away.

After striking the bicycle, Petitioner pulled her car back onto the highway and drove about a mile before parking behind a Dollar General Store. People in a car in traffic behind the collision followed Petitioner in her vehicle. They parked facing Petitioner's vehicle, 60 or 70 years away. A few minutes later they observed her get out and appear to stagger around to look at the front of the car. They observed her reach into the passenger side to get a blue item, which she appeared to throw into an adjacent field. Officers later recovered a blue cup in that area which smelled of alcohol. The

---

[1] "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).

[2] The court relies on the statement of facts in Petitioner's initial brief on appeal, as supplemented by the statement of the case and facts provided in the answer brief by the State, as well as Petitioner's testimony at trial. Ex. D, pp. 4-13; Ex. E, pp. 1-8; Ex. C, pp. 544-660, respectively.

witnesses said after tossing the item Petitioner got back in the car and went in reverse, when another vehicle blocked the exit and she stopped.

One officer arrived at the Dollar General at 6:53 p.m., another arrived at 7:05 p.m.. Both testified that Petitioner appeared intoxicated. Petitioner both denied and admitted that the blue cup in the field was hers. She said she had no idea she hit someone on a bicycle. Petitioner failed a field sobriety test, and a blood test revealed a blood alcohol level of .225, well over the legal limit of .08. The State offered evidence that the collision with the bicycle caused the tire of Petitioner's vehicle to deflate, and deflation of the tire began after the incident; the defense offered evidence that the car's tire had a blow-out which caused the collision.

Petitioner presented evidence of panic attacks and a history of depression and fainting, often preceded by ringing in the ears or blurred vision. She testified that while driving she heard ringing in her ear and wanted to pull the car off the road, so she drove from the left lane into the right, then something hit her car which she thought was a rock or a brick. She said she pulled back on the road then noticed the car pulling to the right, but did not want to pull off on the highway or other places before she reached the Dollar General, thinking that was a better place to leave the car overnight.

Petitioner said that in the Dollar General parking lot she was shaking and very anxious, and drank all of a large, strong drink she had packed for her trip, to have later. Petitioner argued that drinking at this time – after the collision but before officers arrived – explained why she failed the sobriety tests and had such a high blood level, and that there was no proof she was drinking or impaired before the collision.

In the § 2254 petition, Petitioner claims fundamental error in denial of her motion for judgment of acquittal, as the state failed to prove that she was under the influence of alcohol at the time of the collision. Doc. 1, p. 4.  She asserts this was raised on direct appeal.  *Id.*  In ground two, Petitioner asserts that the trial court erred and abused its discretion in allowing a post-accident video of Petitioner to be played to the jury.  *Id.* She claims this was in violation of her Miranda rights[3] and the accident report privilege under state statute.  *Id.*, pp. 4-5[4].  Petitioner asserts that this was raised on direct appeal.  *Id.*, p. 5.

**One Year Limitations Period**

Respondent asserts that the petition is untimely, as it should have been filed no later than January 2, 2008, yet was filed the next day, on January 3, 2008.  Doc. 13, pp. 3-4.  Respondent also asserts that Petitioner did not fairly present her claims in the state appellate court as federal constitutional claims, but that if and to the extent federal claims are raised here and were properly exhausted, they lack merit.  *Id.*, pp. 4-9 (exhaustion) and 9-19 (merits).  Petitioner raises various arguments in the reply, addressed ahead.

There is a one year limitations period for filing a § 2254 petition.  28 U.S.C. § 2244(d)(1).  The period generally runs from "the date on which the judgment became

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[4] A motion to suppress all statements made on the video taken on August 4, 2004, was filed by defense counsel.  Ex. A, p. 74.  The argument in support, in its entirety, was that "[t]he statement was taken in violation of the defendant's 5th amendment against self incrimination."  *Id.*

final by the conclusion of direct review or the expiration of the time for seeking such review," unless a later commencement date applies. § 2244(d)(1)(A).[5]

A judgment is final for purposes of § 2244(d)(1)(A) when the 90 day period for filing a petition for writ of certiorari – which runs from the date of the opinion rather than the mandate – expires, even if the petitioner does not seek review by certiorari. Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003); Nix v. Sec'y for the Dep't of Corrections, Fla. Stat. § , 1236-37 (11th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005) (citing Clay, other citations omitted). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted" against the one year period. § 2244(d)(2).

The judgment at issue here was affirmed on appeal on October 4, 2006. Ex. G. Petitioner did not seek rehearing or file a petition for writ of certiorari, so the judgment became final 90 days later, on Tuesday, January 2, 2007, when the time to file a petition for writ of certiorari expired. Petitioner filed a Fla.R.Crim.P. 3.800(c) motion, which did not toll the time under § 2244(d)(2).[6] The last day for filing a § 2254 petition was

---

[5] One later date which is arguably applicable is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). This is addressed ahead.

[6] The Rule Fla.R.Crim.P. 3.800(c) motion filed on December 7, 2006, was denied by order signed December 15 and file-stamped December 18, 2006. Exs. H (motion) and I (order denying motion). As a challenge to a legal sentence it was not a tolling motion for purposes of § 2244(d)(2). Alexander v. Secretary, Dep't of Corrections, 523 F.3d 1291, 11th Cir. 2008) (Rule 3.800(c) motion for relief from a legal sentence on the basis of leniency does not toll the time under § 2244(d)(2)). Moreover, it was pending before the judgment became final, when there was no time running which could be tolled.

therefore on Wednesday, January 2, 2008.  Downs v. McNeil, 520 F.3d 1311, 1317-1318 (11th Cir. 2008) (applying the "anniversary method" for determining when the one year period expires), *citing* United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir.), *cert. denied,* 531 U.S. 878 (2000) (other citations omitted).

     In Marcello, the judgment became final on December 1, 1997, the date the petition for writ of certiorari was denied.  212 F.3d at 1007-08.  The court adopted the anniversary method, finding that the 28 U.S.C. § 2255 motion[7] had to be filed on or before December 1, 1998.  *Id.*, at 1009-10 (also noting the anniversary date would be the last day to file even when the intervening year is a leap year).  "Foreclosing litigants from bringing their claim because they missed the filing deadline by one day may seem harsh, but courts have to draw lines somewhere, statutes of limitation protect important social interests, and limitation periods work both ways . . . ."  212 F.3d at 1010 (citation omitted).

     Petitioner's last day for filing was January 2, 2008, but the earliest possible date of filing is the date of her signature on January 3, 2008.  Doc. 1, p. 6.  Indeed, it appears it was actually filed the next day, on January 4, 2008.  Petitioner's signature appears following this stock language, part of the court's form petition:

> I declare or state under penalty of perjury that this petition was (check one):
>
> ☐ delivered to prison officials for mailing, or ☐ deposited in the prison's internal mail system on:
>
> _____ (date).

---

     [7] There is a one year time limit for filing a § 2255 motion, which also runs (absent application of a later date) from the date the judgment became final.

Case No. 3:08cv8-LAC/WCS

Doc. 1, p. 6.  The boxes are unchecked, but the date was filled in the blank space as 01/03/08.  *Id.*

The envelope it was mailed in has been scanned into the record by the clerk as doc. 1-2.  On the back of the envelope is a "RECD/MAILROOM" stamp of January 4, 2008, and this date was initialed by Petitioner.  Doc. 1-2, p. 2.

The motion to proceed in forma pauperis, with Petitioner's signature dated January 3, 2008, was mailed with and received by the clerk at the same time as the petition.  Doc. 2, pp. 1 (stamp) and 2 (signature).  Beneath the signature area there is standard language on the form, instructing litigants to attach inmate bank accounts, under which Petitioner wrote:

> I was unable to obtain bank account certificate and copies due to my recent illness as I was in the infirmary under quarantine for approximately one month and I was recently discharged from the infirmary.  I will send the account certificate as soon as I am permitted to obtain the required signature from institution staff.  *The institutional yard was closed today 1/04/08.*

*Id.*, p. 2 (emphasis added).

It therefore appears that Petitioner actually delivered her petition to prison officials for mailing on January 4, 2008, and it should be considered filed on that date under the mailbox rule.  Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Day v. Hall,  528 F.3d 1315, 1318 (11th Cir. 2008) (applying Washington to state habeas petition).  Whether by one day or two, however, the § 2254 petition is untimely.

**Defenses to the Time Bar**

In her reply, Petitioner raises ineffective assistance of counsel claims, both as new grounds for relief and as cause for her procedural default in state court.  Doc. 18,

pp. 2-a, 2-b, 2-c, 11-17 (pp. 3-5, 14-19 in ECF). As potentially relevant to the time issue, she asserts she just recently discovered her claims of ineffective assistance of counsel. *Id.*, p. 17 (p. 20 in ECF). She also asserts entitlement to equitable tolling, claiming mental illness and a life threatening illness which preclude her from filing prior to January 3, 2008. Doc. 18, pp. 6-10, 16 (pp. 9-13, 19 in ECF).

**Ineffective Assistance of Counsel and "New Evidence"**

Petitioner included with the reply an "Addendum of facts," in support of grounds one and two (which were raised in the initial petition), and to support additional grounds three and four (which were not). Doc. 18, pp. 2-a and 2-b (pp. 3 and 4 in ECF). As ground three she asserts that her attorney should not have allowed her to testify, but admits counsel "did his best to convince me that I should not testify," and Petitioner "admit[s] that I am my own worst enemy when I talk." *Id.*, p. 2-b (p. 4 in ECF). She claims she refused a plea offer for eight years because she wanted to look at the victim's family to tell them she did not know she had hit him, and to say how sorry she was. *Id.* As ground four Petitioner asserts "new evidence" that was not admitted at trial, claiming counsel failed to introduce evidence that, while *after* the accident she stopped the car and drank alcohol to calm herself, she was actually sober at the time of the accident. *Id.* Newly raised grounds three and four are baseless.[8]

---

[8] Petitioner's determination to testify against counsel's advice is not attorney error because it was ultimately her decision to make. *See* United States v. Teague, 953 F.2d 1525, 1533-34 (11th Cir.) (en banc), *cert. denied*, 506 U.S. 842 (1992); Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999) (citing Teague). The claim that counsel failed to submit evidence that Petitioner was drinking after the accident rather than before is completely contradicted by the record and, as summarized above, was a key feature of the defense. *See* e.g., Ex. C, pp. 574-585, 649-650, 653 (Petitioner's testimony), pp. 747-772 (closing argument by defense counsel).

Case No. 3:08cv8-LAC/WCS

Petitioner also addresses Respondent's argument that her claims are defaulted by asserting claims of ineffective assistance of counsel as cause for the procedural defaults. See Doc. 18, pp. 11-16 (pp. 14-19 in ECF).

Although the court need not reach procedural bar because the petition is time barred,[9] I have addressed claims of attorney error asserted as cause for the default because to constitute cause for a default, "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (emphasis by the Court). Indeed, where ineffectiveness is asserted as cause for a procedural default, the ineffectiveness claim must itself be properly exhausted. 529 U.S. at 452-53, 120 S.Ct. at 1591-92 (to constitute cause, ineffectiveness claim must be properly exhausted and not defaulted).

As explained ahead, an independent claim based on newly discovered facts could start the one year period from a later date. This court therefore looks to whether there are any ineffective assistance of counsel claims (albeit raised in defense of a procedural bar) which are based on a newly discovered factual predicate which could affect the time calculation.[10]

---

[9] Melson v. Allen, 548 F.3d 993, 999 (11th Cir. 2008).

[10] It is noted that Petitioner did not seek and was not granted leave to file an amended § 2254 petition. As set forth ahead, the time limit is unchanged by any allegedly new claims. An amended petition would at best be as untimely as the initial untimely § 2254 petition. Compare Mayle v. Felix, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (discussing when claims in an amended petition relate back to the date a *timely* original petition was filed).

Petitioner asserts the following alleged instances of ineffective assistance of counsel as cause for procedural defaults. Doc. 18, pp. 11-16 (pp. 14-19 in ECF). She claims that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal, as "[d]efense counsel's ineffectiveness is quite obvious on the face of the record." *Id.*, p. 14 (p. 17 in ECF) (setting forth errors of trial counsel).

Petitioner claims she "did not discover the ineffectiveness of counsel grounds until on or around June 1, 2008. The issues are extremely complex and could not have reasonably been discovered earlier under the totality of circumstances." *Id.*, p. 17 (p. 20 in ECF). Given the alleged discovery date of June 1 with no other indication of how these things were discovered by Petitioner, it appears she "discovered" the claims now asserted when she reviewed the arguments raised in Respondent's answer. The answer was mailed to Petitioner on May 9, 2008. Doc. 13, p. 20.

The one year period for filing a § 2254 petition may run from "the date on which the *factual predicate* of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D) (emphasis added).

> Due diligence means the petitioner must show some good reason why he or she was unable to discover the facts at an earlier date. *Merely alleging that an applicant did not actually know the facts underlying his or her claim does not pass the test.* Instead, the inquiry focuses on "whether a reasonable investigation . . . would have uncovered the facts the applicant alleges are 'newly discovered.*

Melson v. Allen, 548 F.3d 993, 999 (11th Cir. 2008) (citations and quotation marks omitted, emphasis added).

---

Petitioner does not explain any particular "newly discovered" factual basis for her ineffectiveness of counsel claims. These claims are based on errors of trial counsel allegedly not discoverable until after the answer to her § 2254 was filed, yet she faults appellate counsel for failing to raise them on appeal. The initial appellate brief was filed in July of 2006. If the factual predicate should have been obvious to appellate counsel, it cannot also be true that Petitioner could not with due diligence discover the factual predicate until almost two years later.[11]

Petitioner relies on what counsel did or did not do at trial based on the trial record and her recollection of trial preparation and proceedings. For example, that counsel "failed to move to suppress all of Ms. Wheeler's statements made to law enforcement," is a claim that is readily apparent from the trial transcript (and would have been personally observed by Petitioner at trial); that "counsel failed to discuss the pro's [sic] and cons of an erroneous jury instruction" with Petitioner[12] can only be based on her memory that they did not discuss it. Doc. 18, p. 17 (p. 20 in ECF). The fact that

---

[11] Morever, any ineffectiveness of trial counsel claims should have been raised by Petitioner in a FLA. R. CRIM. P. 3.850 motion, not by appellate counsel. Bruno v. State, 807 So.2d 55, 63 (Fla. 2001) (as a rule, a defendant "can only raise an ineffectiveness claim via a rule 3.850 motion, even if the same underlying facts also supported, or could have supported, a claim of error on direct appeal.")

[12] See also doc. 18, pp. 15-16 (pp. 18-19 in ECF) (asserting ineffectiveness as counsel allowed an instruction for vehicular homicide to be given to the jury even though that is not a lesser included offense of DUI manslaughter, and failed to discuss this with his client); Ex. C, pp. 681-685 (at the charge conference, defense counsel sought an instruction on the lesser included offense of vehicular homicide, the prosecutor did not believe it to be supported by the evidence, but in an abundance of caution did not object to that or defense counsel's request for an instruction on the lesser included offense of reckless driving). Since Petitioner was not convicted of a lesser offense, and presumably would have been better off if she had, possible prejudice from this alleged error is not apparent.

Case No. 3:08cv8-LAC/WCS

appellate counsel did not raise ineffective assistance of trial counsel (or any other claims) is apparent on the face of the initial brief. The true "factual predicate" of these claims was discoverable to Petitioner at or soon after the trial and appeal. See Melson, 548 F.3d at 1000 (finding the petitioner "either had personal knowledge of, or could have discovered using due diligence, the factual predicates for his claims prior to his 1996 state court trial.").

Petitioner has not shown a factual predicate which could not have been previously discovered with the exercise of due diligence, and the latest commencement date for the one year period is January 2, 2007, the date upon which the judgment became final.

Although the court need not reach procedural default, it is noted that Petitioner has never raised any claims of ineffective assistance of counsel in state court, and is now procedurally barred from doing so. The time for raising a claim of ineffective assistance of trial or appellate counsel in Florida is two years from the date of the mandate, which (according to the docket in 1D05-6163, available online) issued on October 20, 2006.[13] See doc. 18, p. 17 (p. 20 in ECF) (noting Petitioner's time for filing a Rule 3.850 motion was two years from the mandate, and "would run out in the end of October, 2008).[14] That time has passed, and Petitioner has defaulted any and all

---

[13] See Forisso v. State, 968 So.2d 677, 678 (Fla. 4th DCA 2007) (FLA. R. CRIM. P. 3.850 motion alleging ineffectiveness of trial counsel was insufficient, and claim of ineffective assistance of appellate counsel should be raised in a FLA. R. APP. P. 9.141(c) petition filed in the appellate court; the "deadline for filing either one or both is the same . . . two years after the issuance of this court's mandate in his direct appeal.").

[14] Petitioner asked that the petition be considered timely and granted on the merits, or alternatively as prematurely filed, to allow her to return to state court. Doc.

ineffectiveness claims, whether asserted as an independent ground for relief or as cause for a procedural default.

**Equitable Tolling**

On pages attached to the reply, Petitioner addresses the time issue by providing a summary of her personal status during the period between the unfavorable decision on appeal and expiration of the one year. Doc. 18, pp. 6-10 (pp. 9-13 in ECF). Facts preceding January 2, 2007, before the one year commenced, would presumably be irrelevant as there was no time to toll prior to commencement of the one year period. Since the facts are raised in a general fashion without specific dates, however, they are set forth here in an abundance of caution.

From October to November of 2006, Petitioner claims that she was transferred to a different institution, had trouble stabilizing on medication due to anxiety and depression, was crying uncontrollably, and reading court transcripts made the crying worse and resulted in frequent fainting spells. *Id.*, pp. 6-7 (pp. 9-10 in ECF).

From December 2006 to February of 2007, Petitioner claims she tried to obtain relief in state court with her Rule 3.800(c) motion, was having fluctuations in blood

---

18, p. 18 (p. 21 in ECF). Dismissal of an untimely petition would not help even if Petitioner still had available remedies in state court. *Cf.* Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000) ("a § 2254 petition cannot relate back to a previously filed petition that has been dismissed without prejudice [for lack of exhaustion] because there is nothing for the current petition to relate back to."); Rhines v. Weber, 544 U.S. 269, 275-277, 125 S.Ct. 1528, 1533-35, 161 L.Ed.2d 440 (2005) (allowing district courts discretion to employ a stay and abeyance procedure in limited circumstances, to avoid the problem of terminating any federal review where a petitioner files a timely but mixed petition, which is not dismissed as such until *after* the limitations period has expired).

Case No. 3:08cv8-LAC/WCS

pressure, and had sleep disturbances and nightmares, especially when she reviewed the transcript or any documents regarding the victim. *Id.*, p. 7 (p. 10 in ECF).

Petitioner alleges that her anxiety was heightened in March of 2007 because the victim's birthday was in March, and Petitioner "began experiencing flashes" of the victim lying in a fetal position (as he was later described to her) after the accident . She claims she was upset by accusations (made by the trial judge and others) that she just drove off with no remorse. *Id.*, pp. 7-8 (pp. 10-11 in ECF). Petitioner asserts that her own grief has deliberately been overlooked, that she has also been a victim, and that by May of 2007 she "was experiencing other serious episodes related to her mental functioning." *Id.*, p. 8 (p. 11 in ECF).

In June and August of 2007, Petitioner claims her dosage of anti-depression medication was increased, causing problems with her blood pressure, thus requiring additional blood pressure medication. *Id.*, p. 8 (p. 11 in ECF). Relevant to this period, Petitioner claims her bifocals were broken with no replacement until the end of the year, and she "could not read except by taping together 2 borrowed pair[s] of reading glasses to suffice." *Id.*

In September and November of 2007 Petitioner claims she again tried to look at her case to see if there was any kind of relief to be sought, and "[s]hortly before her 60th birthday, she began to feel increasingly ill." *Id.*, pp. 8-9 (pp. 11-12 in ECF).[15] In December of 2007, Petitioner claims, her skin began to break out and she was diagnosed with shingles. *Id.*, p. 9 (p. 12 in ECF). She was placed in quarantine in the

---

[15] Petitioner's date of birth is November 26, 1947. Ex. B, p. 161 (pre-sentence report).

infirmary for three weeks, from December 2-21, 2007.  *Id.*[16]  Petitioner alleges that this was a life threatening illness which made her unable to function, and her documents and personal items were also quarantined.  *Id.*, p. 10 (p. 13 in ECF).

Petitioner claims that after release from the infirmary she "has overcome terrendous [sic] scarring and nerve damage never to be restored."  *Id.*, p. 9 (p. 12 in ECF).  She alleges that upon release from the infirmary she was not released to her former job assignment in food services, so she attended a 64 hour wellness course to qualify for a job assignment in the gym.  *Id.*  "This was all surrounding the holiday period," but "[n]otwithstanding her inability to function properly at that time, Ms. Wheeler mustered up enough ENERGY to file her petition . . . on January 3, 2008."  *Id.*

Petitioner asserts that she "pursued her rights diligently and extra ordinary circumstances stood in her way."  *Id.*, p. 10 (p. 13 in ECF), citing Steed v. Head, 219 F.3d 1298 (11th Cir. 2000) and Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (both discussing equitable tolling).[17]  *See also* Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) (Lawrence II)[18]

---

[16] She alleges that she was first placed in the infirmary on December 2 and then quarantined until December 21, it will be assumed she was in quarantine since the time of the initial placement.

[17] These cases, cited by Petitioner note the standard (extraordinary circumstances unavoidable even with due diligence) for equitable tolling, and found equitable tolling not supported.  219 F.3d at 1300 (counsel's miscalculation of the time period did not warrant equitable tolling); 544 U.S. at 418-419, 125 S.Ct. at 1814-15 (even accepting petitioner's theory of an extraordinary circumstance, he did not demonstrate the requisite diligence).

[18] This affirmed the Eleventh Circuit's opinion in Lawrence v. Florida, 421 F.3d 1221 (11th Cir.2005) (Lawrence I).  Certiorari was granted to address whether a state court application was still "pending" after the state court entered a final judgment in a

(assuming without deciding that equitable tolling is available, petitioner must show diligence and " 'that some extraordinary circumstance stood in his way' and prevented timely filing.") (quoting Pace).  Petitioner contends that, "[b]ut for her mental state of mind [and] medical condition, she was precluded from filing her petition prior to, on or around January 3, 2008."  Doc. 18, p. 16 (p. 19 in ECF).

As set forth in Steed, "[e]quitable tolling is an extraordinary remedy which is typically applied sparingly."  219 at 1300 (citation omitted); Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (*quoting* Steed); Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005) (Lawrence I) (*quoting* Steed).  Petitioner "bears a strong burden to show specific facts to support [her] claim of extraordinary circumstances and due diligence."  Brown, 512 F.3d at 1307, *citing* Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir.), *cert. denied,* 531 U.S. 971 (2000).  The prisoner in Akins claimed there were two periods of prison lockdown, and that his legal papers were misplaced and not returned until after the time for filing had passed.  204 F.3d at 1089.  The court found that while he spent a portion of time in lockdown, "Akins failed to demonstrate that the untimely filing of his motion was due to extraordinary circumstances that were both beyond his control and unavoidable even with diligence."  *Id.*, at 1090.

In Lawrence I, the court found that while mental incompetence may support equitable tolling, there must be a "causal connection" between the alleged incapacity and the inability to timely file; the claim that petitioner had a low IQ and "suffered from mental impairments his entire life" did not establish entitlement to equitable tolling. 421

---

post conviction proceeding where a petition for writ of certiorari was filed with the United States Supreme Court.

Case No. 3:08cv8-LAC/WCS

F.3d at 1226-27 (collecting cases). See also, Fisher v. Johnson, 174 F.3d 710, 713, 715? and n. 9 (5th Cir. 1999), cert. denied, 121 S.Ct. 1124 (2001) (mental incompetency might support equitable tolling but brief period of incapacity did not necessarily warrant tolling, petitioner had "more than enough time to file" after the period of incapacity had ended and "equity is not intended for those who sleep on their rights.") (citations and footnote omitted).

While Petitioner has alleged facts tending to show that preparation of a § 2254 petition might have been difficult or unpleasant for her at various times during the one year period, this does not show extraordinary circumstances, unavoidable even with due diligence, to justify equitable tolling. The most specific allegations are of Petitioner's illness, resulting in her placement in quarantine for three weeks in December of 2007. But Petitioner was placed in quarantine after all but a month of the period had already elapsed, and she was released with some time remaining before the January 2, 2008, deadline. The period Petitioner was in the infirmary does not explain why she would have been able to file either before admission to the infirmary or after release. Petitioner completed a 64 hour course to qualify for a new job assignment around the time of her release from quarantine and the deadline for filing.[19] This is contrary to a claim of inability to function following release from the infirmary, in the period immediately preceding the filing of the petition.

---

[19] Petitioner claims this course was after her release, and – since Petitioner alleges it in her argument for equitable tolling – it presumably was completed or at least partially completed before the January 2, 2008, deadline.

Petitioner's claims of anxiety and other emotional and physical problems are insufficiently general.  She claims to have depression and high blood pressure, controlled by medication; and a problem with her eye glasses, temporarily remedied by borrowing glasses.  These are not extraordinary circumstances and do not show any inability to timely file.  The allegation that the illness rendered Petitioner ineligible to return to her job assignment in food services implies that she was working in food service prior to her illness, which is contrary to a claim of general inability to function due to physical and mental problems.

Finally, it must be noted that the § 2254 petition filed in this case is not a complicated document.  Petitioner raises essentially the same two grounds as were raised on appeal, and she raised them by filling out a standard six page form, provided by the court.  No reason is given and none is apparent as to why preparation of the petition filed in this case would take much time at all.  This is not a prisoner who is unable to read and write.  She worked at a federal court off and on for seventeen and a half years, and at the time of the accident was employed at the Eglin Beach Community Center, at Eglin Air Force Base.  *See* Ex. B, pp. 144-150 (sentencing transcript), pp. 161-168 (pre-sentence investigation report).  The more likely explanation of Petitioner's filing one day late is not that any extraordinary circumstance prevented her from filing, but that she miscalculated the due date.  This does not entitle her to equitable tolling. *See* Steed, 219 F.3d at 1300 (miscalculation or misinterpretation by attorney in interpreting the limitations period not an extraordinary circumstance warranting equitable tolling); Lawrence I, 421 F.3d at 1226 (rejecting argument that State's

provision of incompetent post conviction counsel justified equitable toling; collecting cases finding attorney negligence not a basis for equitable tolling).

**Recommendation**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Petitioner Wheeler, challenging the judgment and sentences imposed by the Circuit Court of the First Judicial Circuit, in and for Santa Rosa County, Florida, case number 04-802CFA, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on May 26, 2009.

```
                              s/   William C. Sherrill, Jr.
                              WILLIAM C. SHERRILL, JR.
                              UNITED STATES MAGISTRATE JUDGE
```

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**